UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAIME MANUEL VELAZQUEZ ROMO, | ) | NO. ED CV 13-1521-AS |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| Plaintiff, | ) | **AND ORDER OF REMAND** |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On August 23, 2013, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability, and disability insurance benefits ("DIB"). (Docket Entry No. 1). On December 30, 2013, Defendant filed an

Answer and the Administrative Record ("A.R."). (Docket Entry Nos. 10, 11). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 6, 7). On April 25, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 15). The Court has taken this matter under submission without oral argument. See C.D. Local R. 7-15; "Order Re: Procedures in Social Security Case," filed August 29, 2013 (Docket Entry No. 5).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former assembler (A.R. 23), asserts disability beginning May 13, 2008, based primarily on a work-related lower back injury (id. 136). On December 7, 2011, the Administrative Law Judge ("ALJ"), Troy Silva, examined the record and, with the assistance of a Spanish interpreter, heard testimony from Plaintiff, and from a vocational expert ("VE"), Connie Guillory. (Id. 24, 42-70).

On December 30, 2011, the ALJ issued a decision denying Plaintiff's application for DIB. (Id. 10-25). The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine; cervical, thoracic, and lumbar disc protrusions; bilateral cervical radiculopathy; bilateral lumbar radiculopathy; type II anterolateral acromion left shoulder; depressive disorder; and anxiety disorder. (Id. 12). The ALJ found no evidence to support Plaintiff's complaint of knee pain. (Id. 12-13). He also found Plaintiff's hypertension,

2

hyperlipidemia, gastritis/GERD, irritable bowel syndrome, and diabetes mellitus to be nonsevere. (Id. 13).

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work and can lift and/or carry twenty pounds occasionally and ten pounds frequently; perform pushing and pulling within these weight limitations; can stand and/or walk for six hours of an eight-hour workday with regular normal breaks; can occasionally stoop, kneel, squat, twist, bend, crouch, and crawl; cannot climb ladders, ropes, or scaffolds, but can occasionally climb stairs and ramps; is unable to perform prolonged or repetitive overhead work; and is limited to simple repetitive tasks. (Id. 14).

Relying on the testimony of the VE, the ALJ determined that Plaintiff is able to perform his past relevant work as an assembler. (Id. 23). Alternatively, the ALJ found that based on Plaintiff's age, education, limited ability to communicate in English, work experience, and RFC, Plaintiff was also capable of performing other jobs in the national economy such as hand packer (Dictionary of Occupational Titles ("DOT") No. 559.687-074); bagger (DOT No. 686.685-030); and folder (DOT No. 686.685-030). (Id. 24).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date of May 13, 2008, through December 30, 2011, the date of the decision. (Id. 25). On June 27, 2013, the Appeals Council denied review. (Id. 1).

///

///

### STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's

4

claim.  See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred in failing to (1) properly consider the relevant medical evidence of record; and (2) properly consider Plaintiff's subjective complaints. (Joint Stip. 3).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the ALJ materially erred in failing to develop the record.[1]

**A.   Applicable Law**

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb

---

[1]   The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)).  The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity.  Id. § 404.1520(a)(4)(i).  "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit."  Id. §§ 404.1510, 404.1572.  If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities.  See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686.  The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686.  An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."  Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled.  Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. <u>Webb</u>, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether – taking into account the claimant's age, education, work experience and RFC – there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Tackett</u>, 180 F.3d at 1098.

///

///

///

7

**B.**    **The ALJ Failed to Properly Develop the Record**

   **1.**    **Background**

   Plaintiff contends that the ALJ failed to properly consider the results of a nerve conduction study ("NCS") conducted on August 4, 2008 which found that Plaintiff suffers from bilateral median sensory demyelinating neuropathy at the wrists, moderate on the right with motor and sensory involvement, and mild on the left. (Joint Stip. 4 (citing A.R. 17-18, 289-93)).   Although the ALJ reported the results of this study (A.R. 17-18), he failed to evaluate its results and make a determination of whether Plaintiff's neuropathy was a severe or non-severe medially determinable impairment. (Id.).

   Similarly, the ALJ reported an electromyogram ("EMG") and NCS of Plaintiff's upper and lower extremities performed by Norman A. Linder, MD., on February 24, 2009 (Id. 19), noting that the EMG was normal and that the NCS revealed the following:

   [D]emyelination in the motor fibers of the right ulnar
   nerve at the elbow, demyelination in the sensory fibers
   of the left median nerve at the wrist, severe axonal loss
   with demyelination in the motor fibers of the right
   peroneal nerve, abnormality of the right H reflex.  These
   findings may be consistent with diagnoses of mild right
   ulnar motor neuropathy at the elbow, mild right median
   sensory neuropathy at the wrist, [and] moderate left
   median sensory neuropathy at the wrist . . . .

(Id. (citation omitted); see also id. 646-61).  However, Dr. Linder
offered no opinion on whether these findings would result in any
functional limitations for Plaintiff.

Plaintiff contends that the ALJ failed to characterize
Plaintiff's upper extremity neuropathy "in terms of
severe/nonsevere impairments and in terms of medically
determinable/not medically determinable impairments." (Joint Stip.
5).  Plaintiff notes that the VE testified that if Plaintiff was
limited "to occasional use of the upper extremities bilaterally
'for gripping, grasping - - and no forceful gripping or grasping
with either," he would be precluded from performing any of the jobs
identified by the VE.  (Id. 5-6 (citing A.R. 70)).

### 2.  __Analysis__

The ALJ gave "great weight" to the opinion of the agreed
medical examiner, Peter M. Newton, MD, who examined Plaintiff on
several occasions in connection with Plaintiff's workers'
compensation claim, including on January 6, 2009 (A.R. 325-43),
February 24, 2009 (id. 382-405), January 19, 2010 (id. 406-26),
April 6, 2010 (id. 458-72), and January 5, 2011 (id. 473-91).  In
his February 24, 2009, examination, Dr. Newton reviewed the results
of the February 24, 2009, NCS.[2]  (Id. 385).  Dr. Newton also

_____

[2]  Dr. Newton's record review on that date also showed that
from July 13, 2007, through May 8, 2008, Plaintiff had been limited
(continued...)

9

discussed Plaintiff's hand and arm complaints:

> He has some difficulty reaching and grasping something
> off a shelf at eye level, with gripping, grasping,
> holding and manipulating objects with his hands, and with
> repetitive motions such as typing on a computer. He has
> a lot of difficulty climbing one flight of stairs,
> standing or walking 30 minutes to an hour, reaching and
> grasping something off a shelf overhead, and with
> kneeling, bending or squatting. He is unable to sit for
> 30 minutes to an hour, sit for two hours, stand or walk
> for two hours, do pushing and pulling activities, and do
> forceful activities with his arms and hands.

(Id. 403).


Dr. Newton's assessed restrictions – that Plaintiff should not do heavy lifting, repetitive or prolonged overhead work, or repetitive bending, twisting, squatting, and turning – related only to Plaintiff's work-related injuries to his cervical and lumbar spine. (See, e.g., id. 404, 425, 471, 490). Neither Dr. Newton, nor the NCS reports, offered an opinion as to whether Plaintiff would have any functional limitations in his upper extremities and the ALJ failed to make any such findings.


On November 30, 2011, consulting examiner Vincente R. Bernabe,

---

[2](...continued)
to lifting, pulling, and pushing up to ten pounds. (Id. 397-400).

DO, examined Plaintiff. (Id. 20, 731).   Dr. Bernabe noted Plaintiff's complaints of pain in his hands, wrists, elbows, and shoulders, but found that Plaintiff's range of motion and sensation were "normal" for these extremities.  (Id. 732-34).  Dr. Bernabe opined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, and that "pushing and pulling may be performed on a frequent basis." (Id. 735).  The ALJ gave Dr. Barnabe's opinion, as well as the opinions of the other State agency consultants, "slightly less weight" because Dr. Bernabe and the other consultants did not have the benefit of considering the additional evidence presented at the hearing. (Id. 21-22).  The ALJ also gave Plaintiff the benefit of the doubt by adopting more restrictive physical limitations based on Plaintiff's subjective complaints.  (Id. 21-22).

In general, an ALJ's failure to discuss a claimant's impairment at step two may be deemed harmless only when the ALJ's error did not prejudice a claimant at later steps in the sequential evaluation process.  For example, in Burch, 400 F.3d at 676, the Ninth Circuit assumed, without deciding, that it was legal error for the ALJ not to discuss plaintiff's obesity in his step two analysis.  Burch, 400 F.3d at 682.  However, the Court concluded that the assumed error was harmless, because it would not have impacted the ALJ's analysis at either step four or five of the evaluation process.  Specifically, the Court found that plaintiff failed to proffer any evidence of functional limitations due to her obesity that would have impacted the ALJ's analysis at step four (Id. at 683), and there was no prejudice at step five because the ALJ "adequately considered [plaintiff's] obesity in his RFC

determination," i.e., there was no "functional limitations as a result of [plaintiff's] obesity that the ALJ failed to consider." Id. at 684; see also Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list plaintiff's bursitis at step two was harmless, because the ALJ "extensively discussed" plaintiff's bursitis and "considered any limitations posed by the bursitis at [s]tep [four]").

However, in this case, the ALJ never gave specific and legitimate reasons for rejecting Dr. Linder's NCS findings, and failed to address the issue of whether Plaintiff's upper extremity impairments would have more than a minimal effect on Plaintiff's ability to function in the workplace.[3] Unlike Burch and Lewis, the Court cannot find this error to be harmless because the VE testified that an individual with Plaintiff's RFC *and* the additional limitations of *occasional* use of the upper extremities for gripping and grasping, and *occasional* fingering, would not be able to perform the positions identified and that the only positions available would be those requiring public contact, such as hostess, ticket taker, and information clerk positions. (Id. 76-77). The VE testified that because of Plaintiff's limited ability to communicate in English, even those positions would be eliminated. (Id. 76-77).

---

[3]     It appears from at least one medical source that Plaintiff's severe impairment of bilateral cervical radiculopathy could cause pain and loss of sensation, muscle weakness, numbness or tingling in the fingers or hands, and lack of coordination in the fingers and hands.  See, e.g., *Cervical Radiculopathy*, *Web*Md, http://www.webmd.com/pain-management/pain-management -cervical-radiculopathy (last visited January 2, 2015).

**C.   Conclusion**

The Court concludes that the ALJ erred in failing to determine whether Plaintiff's upper extremity neuropathy was a  severe or non-severe medically determinable impairment and that such error was not harmless because: (1) Plaintiff's 2008 and 2009 NCS studies show mild to moderate neuropathic impairment; (2) Plaintiff repeatedly complained of such symptoms to Dr. Newton and others, and at the hearing; (3) Dr. Newton was primarily assessing Plaintiff's work-related back injuries and whether he could return to the job being performed at the time of the workers' compensation injury; (4) Dr. Linder and Dr. Newton failed to offer an opinion as to whether Plaintiff would have functional limitations in the upper extremities based on the results of the NCS tests; (5) the State agency medical consultants and the consultative examiner, Dr. Bernabe, did not have the benefit of considering additional evidence that was available only at the hearing; and (6) the VE's testimony that an additional limitation to occasional grasping, gripping, and fingering would preclude all jobs, Further development of the record relating to Plaintiff's alleged upper extremity impairment and resulting limitations, if any, is necessary.[4]

**D.   Remand Is Warranted**

The decision whether to remand for further proceedings or

---

[4]  The Court expresses no opinion on the merits.

order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Id.</u> at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. <u>McLeod</u>, 640 F.3d at 888; <u>Harman</u>, 211 F.3d at 1179-81 (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate).

Here, the Court has determined that the record needs further development with respect to the issue of Plaintiff's upper extremity impairment and limitations, if any. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as awhole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. <u>Burrell v. Colvin</u>, 2014 WL 7398892 *6 (9th Cir. Dec. 31, 2014)(citations omitted).[5]

---

[5]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be
(continued...)

**ORDER**

     For all of the foregoing reasons, this matter is remanded for further administrative action consistent with this Opinion.


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED:  January 6, 2015.


                                        /s/
                              _____
                              ALKA SAGAR
                              UNITED STATES MAGISTRATE JUDGE

---

⁵(...continued)
appropriate at this time.  "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d at 1021.  Accordingly, the Court declines to rule on Plaintiff's claims regarding whether the ALJ erred in his assessment of Plaintiff's subjective complaints. Because this matter is being remanded for further consideration, this issue should also be considered on remand.

15